# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 23-cr-156(05) (SRN/TNL) |
| Plaintiff, | |
| v. | **ORDER ON DEFENDANT'S OBJECTION** |
| Andrew Calvin Noble, | |
| Defendant. | |

Esther Mignanelli, Thomas Calhoun-Lopez, and David Green, United States Attorney's Office, 300 S. 4th St., Ste. 600, Minneapolis, MN 55415, for United States of America

Lee R. Johnson, Johnson & Greenburg, PLLP, 5775 Wayzata Blvd., Ste. 700, St. Louis Park, MN 55416, for Defendant Andrew Calvin Noble

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Andrew Calvin Noble's Objection [Doc. No. 215] to Magistrate Judge Tony N. Leung's February 2, 2024 Order ("the Order") [Doc. No. 213]. In the Order, Magistrate Judge Leung denied in part Noble's Motion for Severance of Defendants [Doc. No. 150] under Federal Rule of Criminal Procedure 8(b), and denied the motion without prejudice in part under Rule 14(a). For the reasons set forth below, the Court sustains Noble's Objection in part, overrules Noble's Objection in part, and affirms Magistrate Judge Leung's Order, as modified.

## I.     BACKGROUND

### A. Indictment

Defendant Noble is among five defendants charged in a six-count Indictment that alleges violent crimes and narcotics offenses related to an alleged criminal organization known as the "Minneapolis Bloods Enterprise" (the "Bloods").  (*See* Indictment [Doc. No. 1], Count 1 ¶¶ 1–8.)  In order to address Mr. Noble's Objection to the Order, it is helpful to provide context for all of the charges in the Indictment, some of which are not asserted against Mr. Noble.

#### 1.  Count 1

Count 1 of the Indictment charges co-defendants Desean Solomon and Jamaal Rice with RICO conspiracy related to their membership in, or association with, the Bloods.[1] The Indictment alleges that one of the purposes of the racketeering enterprise was to "[e]nrich[] the leaders, members, and associates of the enterprise through, among other things, illegal trafficking and distribution of controlled substances and firearms."  (*Id.*, Count 1 ¶ 4(a).)  Another alleged purpose of the enterprise was to "preserv[e] and protect[] the power, territory, reputation, and profits of the enterprise through threats, intimidation, violence, and destruction, including, but not limited to, acts involving murder, robbery,

---

[1] The RICO statute prohibits "any person employed by or associated with any enterprise engaged in . . . interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  Rather than covering "all instances of wrongdoing," RICO "'is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.'"  *H & Q Properties, Inc. v. Doll*, 793 F.3d 852, 855 (8th Cir. 2015) (quoting *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011)).

assault, and other acts of violence[.]" (*Id.*, Count 1 ¶ 4(b).)

Count 1 does not name Noble as a defendant, nor does it mention his name. However, among the underlying acts alleged to be in furtherance of the RICO conspiracy is an allegation of fentanyl possession and sale on February 25, 2022 involving co-defendant Jamaal Rice. (*Id.*, Count 1 ¶ 8(g).)  As additional underlying acts, the Indictment further alleges Rice's involvement in three other drug-related offenses on separate dates. (*Id.*, Count 1 ¶ 8(d)–(f).)

### 2. Counts 2 & 3

Count 2 charges co-defendants Solomon and Michael Burrell with using and carrying a firearm in furtherance of a crime of violence resulting in death on June 14, 2020.  Count 3 charges Solomon and Leontawan Holt with the same offense resulting in a death on April 23, 2022.  Both of these counts expressly incorporate certain paragraphs from the RICO charge in Count 1, and state that the acts alleged in Counts 2 and 3 were undertaken "for the purpose of maintaining and increasing position in the Bloods, an enterprise engaged in racketeering activity."  (*Id.*, Count 2 ¶ 3; Count 3 ¶ 2.)

### 3. Count 4

Charges against Noble first appear in Count 4 of the Indictment, which charges both him and Rice with conspiracy to distribute a controlled substance (fentanyl) "from in or about 2021, and continuing through at least on or about February 25, 2022[.]"  (*Id.*, Count 4.)  This count makes no reference to any prior counts, nor does it expressly connect the drug conspiracy allegations with the RICO allegations in Count 1.  However, the date of February 25, 2022 mirrors the RICO underlying act attributed to co-defendant Rice in Count 1.

3

(*Compare* Count 4, *with* Count 1 ¶ 8(g).)

### 4.  Counts 5 & 6

Count 5 charges Noble alone with possession with intent to distribute a controlled substance (methamphetamine) and Count 6 charges him alone with possession of a firearm in furtherance of drug trafficking, with both charged offenses allegedly occurring on or about February 5, 2022.

Count 5 does not refer to any prior count, nor does it refer to the RICO allegations in Count 1.

Count 6, charging possession of a firearm in furtherance of drug trafficking, references the date of February 5, 2022 only.  However, it alleges that Noble possessed a firearm in furtherance of the drug trafficking crimes charged both in Count 4 (i.e., the alleged fentanyl conspiracy with co-defendant Rice that occurred on February 25, 2022) and Count 5 (Noble's alleged possession of methamphetamine with intent to distribute, allegedly occurring on February 5, 2022, and charged only against him).

### B.  Separate Case Against Noble, Now Dismissed

Previously, the Government charged Noble alone in a separate indictment, *United States v. Noble*, 23-cr-28 (KMM/ECW), asserting the charges now alleged in Counts 5 and 6 of the Indictment here.  The allegations concerned narcotics offenses occurring on February 5, 2022, but did not refer to any drug conspiracy with Rice or to events occurring on February 25, 2022.  However, the Government subsequently terminated Noble's individual case and charged him in this RICO case.

### C.  Noble's Motion to Sever

In his Motion to Sever, Noble argued that the Government improperly joined him in the Indictment with three of his four co-defendants—Solomon, Burrell, and Holt—in violation of Federal Rule of Criminal Procedure 8(b).  (Def.'s R. 8(b) Mot. to Sever Defs. at 3.)  Noble contended that the Indictment does not allege that he participated in the same act or transaction, or in the same series of acts or transactions, as Solomon, Burrell, and Holt. (*Id.*)  He therefore moved for severance from these three co-defendants due to misjoinder.[2] Even if properly joined, Noble reserved the right to later request that the Court, in its discretion, sever his trial under Federal Rule of Criminal Procedure 14(a).[3]

In opposition to Noble's Motion to Sever, the Government asserted, "All defendants are properly joined under Rule 8(b) because they are members of the Minneapolis Bloods— the RICO enterprise—along with every other defendant named in the Indictment."  (Gov't's Opp'n [Doc. No. 191] at 12.)  As to Noble in particular, the Government asserted, "Mr. Noble's drug trafficking activity undertaken as a member of the Minneapolis Bloods is

---

[2] In a separate motion, Noble also moved to sever counts pursuant to Rule 8(a).  (Def.'s R. 8(a) Mot. to Sever Counts [Doc. No. 155].)  Under Rule 8(a), an indictment "may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Magistrate Judge Leung denied the motion without prejudice, (Feb. 2, 2024 Order at 33), and Noble does not object to this ruling.

[3] Federal Rule of Criminal Procedure 14(a) provides, in relevant part, "If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant . . ., the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

charged in Counts Four, Five, and Six." (*Id.* at 13.)  As to Counts 5 and 6 charged against Noble alone, the Government stated that they "stem from the same RICO enterprise and are provable by the same evidence and witness testimony" as the RICO count.  (*Id.* at 15.) Accordingly, the Government argued that Noble was properly joined with Solomon, Burrell, and Holt.  (*Id.*)

### D.  Magistrate Judge Leung's February 2, 2024 Order

In Magistrate Judge Leung's Order, he found that although the Indictment does not expressly allege that Noble is a member of the Bloods, Noble was nevertheless "inferentially linked" to his co-defendants by the overall scheme and through Count 4.  (Feb. 2, 2024 Order at 27.)  Again, Count 4 charges him and Rice with a narcotics conspiracy with Rice, and Rice is additionally charged in the RICO count.  (*Id.*)  Magistrate Judge Leung also quoted from the Government's opposition memorandum, in which it stated that the charges against Noble were provable by the same evidence and witness testimony that will be used to prove the RICO count.  (*Id.*)  Magistrate Judge Leung thus found that Noble was properly joined in the Indictment with Defendants Solomon, Holt, and Burrell.  (*Id.*)

As noted earlier, regarding Noble's request for severance based on prejudice under Rule 14, Magistrate Judge Leung denied the motion without prejudice.  (*Id.* at 31–32.)

### E.  Noble's Objection and Government's Response

In his Objection, Noble asserts that Magistrate Judge Leung's ruling on joinder under Rule 8(b) was contrary to law for two reasons.  (Def.'s Obj. at 3.)   First, he contends that courts may determine the propriety of joinder only by considering the indictment, and that the magistrate judge erred by considering representations in the Government's responsive

memorandum about joint proof at trial. (*Id.* at 3–5) (citing *United States v. Wadena*, 152 F.3d 831, 848 (8th Cir. 1998)). Second, Noble argues that basing joinder on an "inferential link" is improper, and, on its face, the Indictment fails to allege that he was a member of the Bloods or that he participated in any of the acts or transactions allegedly committed by co-defendants Solomon, Burrell, and Holt. (*Id.* at 5–6.) Noble therefore asks that the Court sustain his Objection and grant his motion to sever based on misjoinder. (*Id.* at 6.) He limits his objection only to the question of joinder under Rule 8(b), as he reserves the right to seek severance at a later time based on prejudice under Rule 14(a). (*Id.*)

In response to Noble's Objection, the Government agrees that the propriety of joinder must be based on the allegations in the Indictment alone. (Gov't's Resp. to Obj. [Doc. No. 217] at 5 & n.2.) Referring only to the Indictment, the Government asserts that joinder is proper because the drug conspiracy alleged in Count 4 "constitute[s] some of the racketeering acts alleged throughout Count 1 of the Indictment," in which co-defendant Rice is a named RICO defendant. (*Id.* at 5–6.) Moreover, although it acknowledges that Noble is not named as a RICO co-conspirator, the Government contends that the drug trafficking activity alleged in Counts 4, 5, and 6 "overlap[s] with the drug trafficking activity alleged in Count [1], which occurred for purposes of enriching or benefiting the enterprise and with the benefit of the protection of the enterprise." (*Id.* at 6.) For these reasons, and because Noble does not argue "clear prejudice" under Rule 14 at this time, the Government asks the Court to adopt the R&R. (*Id.* at 8.)

7

## II.   DISCUSSION

### A. Standard of Review

In reviewing an order from a Magistrate Judge, the Court must set aside portions of an order that are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. Proc. 72(a); Local Rule 72.2. Such an order is "clearly erroneous" when, after a thorough review of the record, the "court is left with the definite and firm conviction that a mistake has been committed." *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553, 556 (D. Minn. 2008) (quoting *Thorne v. Wyeth*, No. 06-cv-3123 (PAM/JJG), 2007 WL 1455989, at * 1 (D. Minn. May 15, 2007)). The order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (quoting *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 592 F. Supp. 2d 1087, 1093 (N.D. Iowa 2008)).

### B. Severance

"When a defendant moves for a severance, a district court must first determine whether joinder is proper under Federal Rule of Criminal Procedure 8. If joinder is proper, the court still has discretion to order a severance under Federal Rule of Criminal Procedure 14." *United States v. Darden*, 70 F.3d 1507, 1526 (8th Cir. 1995). Rule 8 and Rule 14 are to be "liberally construed in favor of joinder." *Id.* (citing *United States v. Rimell*, 21 F.3d 281, 288 (8th Cir. 1994)); *see also United States v. Bledsoe*, 674 F.2d 647, 655 (8th Cir. 1982).

Because Noble limits his objection to Magistrate Judge's ruling on the question of joinder—not severance based on prejudice—the analysis below is confined to the propriety of joinder under Rule 8(b).

### C. Joinder Under Rule 8(b)

#### 1. What the Court May Consider

The question of whether the district court may look outside the indictment when considering a motion under Rule 8(b) has divided the Eighth Circuit in the past, *see United States v. Condon*, No. 3:14-CR-30083-01-02-RAL, 2014 WL 6694782, at *4 (D.S.D. Nov. 26, 2014) (collecting cases), however, in *Wadena*, the Eighth Circuit expressly stated, "An indictment must reveal on its face a proper basis for joinder."  152 F.3d at 848.  As noted earlier, although Magistrate Judge Leung primarily based his ruling on the allegations in the Indictment, he also cited the Government's initial opposition brief and older legal authority for the proposition that consideration of joint proof is appropriate when analyzing joinder. (Feb. 2, 2024 Order at 27.)  Again, earlier legal authority invited such consideration under Rule 8(b), perhaps because appellate courts typically address post-trial joinder arguments, with a fully developed evidentiary record.   However, current Eighth Circuit authority confines the Court's review to the allegations in the indictment.   Therefore, the Court sustains Noble's objection in this regard, to the very limited extent the magistrate judge referenced the Government's representations about joint proof at trial, (Feb. 2, 2024 Order at 27), and the Court modifies the Order to reflect consideration of only the Indictment as a proper basis for joinder.  In all other respects, as the Court discusses below, the magistrate judge's ruling on Noble's Motion to Sever is affirmed.

#### 2. Propriety of Joinder

Under Rule 8(b), an indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions,

constituting an offense or offenses. The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count."  Fed. R. Crim. P. 8(b).

As a general rule, "persons charged in a conspiracy . . . should be tried together." *United States v. Thompson*, 690 F.3d 977, 988 (8th Cir. 2012) (citing *United States v. Lewis*, 557 F.3d 601, 609 (8th Cir. 2009)); *see also United States v. Gravatt*, 280 F.3d 1189, 1191 (8th Cir. 2002) (noting the presumption that persons charged in a conspiracy or jointly indicted based on similar evidence from the same or related events should be tried together); *United States v. Pou*, 953 F.2d 363, 368 (8th Cir. 1992) (same).

In the specific context of RICO conspiracies, some courts have commented that RICO has provided prosecutors with "a much broader scope of authority for joining defendants who are alleged to have participated in a common grouping or association" through a pattern of racketeering activity, rather than a conspiracy to perform any specific predicate crime.  *United States v. Gallo*, 668 F. Supp. 736, 747 (E.D.N.Y. 1987).  "[T]he RICO net is woven rightly to trap even the smallest fish, those peripherally involved with the enterprise."  *Id*. at 748. "Thus, unrelated crimes by others participating in the enterprise's affairs may also be part of the conspiracy charge."  *United States v. Carlisi*, No. 92 Cr 1064, 1993 WL 339079, at *22 (N.D. Ill. Aug. 30, 1993).

### a. Common Scheme or Connected Events Linking the Charges Among Defendants

Under Rule 8(b), the "same series of acts or transactions" generally means acts or transactions undertaken pursuant to a common plan.  *Wadena*, 152 F.3d at 848.  Mere

10

similarity of offenses is insufficient to support joinder, *Bledsoe*, 674 F.2d at 656, and mere overlap in conspiracy membership is likewise insufficient for proper joinder. *United States v. Liveoak*, 377 F.3d 859, 865 (8th Cir. 2004) (citing *United States v. Nicely*, 922 F.2d 850 (D.D.C. 1991) (finding joinder improper where, beyond similarity in membership, two conspiracies had nothing in common more specific than "the common use of falsehoods to make money.")). Rather, joinder has been found proper under Rule 8(b) where "the indictment reflects a sequence of connected events with the defendants being involved at various points in the continuum." *Rimell*, 21 F.3d at 288. Again, "not every defendant joined [in the indictment] must have participated in every offense charged." *Thompson*, 690 F.3d at 988 (citing *United States v. Delpit*, 94 F.3d 1134, 1143 (8th Cir. 1996)).

### b. Eighth Circuit Authority on Joinder

While Eighth Circuit authority involving joinder does not often arise in a RICO-specific context, it nevertheless supports a finding that Noble was properly joined due to his alleged participation in the overall scheme of the Bloods. In *Liveoak*, 377 F.3d at 865, the court considered a joinder challenge asserted by defendant Kelley Liveoak, who ultimately faced a single fraud count charging her with submitting false claims for reimbursement under Missouri's Medicaid program. She argued that she was improperly joined as a defendant with two doctors who were alleged to have conspired to defraud Medicare by falsely certifying patients as homebound. *Id.* at 861. The Eighth Circuit found Liveoak's joinder was proper because the charges involving home health care fraud were linked not only by common conspiracy members, "but also by an overall scheme in which each conspiracy member participated to fraudulently charge the government for health care costs." *Id.* at 865.

11

Similarly, in *Wadena*, 152 F.3d at 848, the court found joinder of a tribal councilmember was proper in a case involving three overlapping conspiracies concerning a tribal construction project, commissions, and elections. The court approved the joinder of three tribal leaders because the indictment alleged more than a mere overlap in personnel and a common objective of making money. *Id*. Rather, "[the councilmember] participated in a series of acts or transactions with the sole purpose of furthering a common scheme of using his and others' positions in tribal government to access tribal funds and misapply those funds for his personal gain." *Id*.

In *Thompson*, 690 F.3d at 988, the court found that even though one defendant, Baggett, was only indicted for firearms offenses, while his co-defendant, Thompson, was indicted for firearms, gambling, and immigration offenses, the charges were "all part of the same overarching scheme in which Thompson made money by operating an illegal gambling business, selling firearms, and receiving money in exchange for arranging a marriage to contravene immigration laws." Accordingly, the Eighth Circuit found that Baggett was properly joined with Thompson. *Id*.

Similarly, in *Rimell*, 21 F.3d at 288–89, one of the defendants argued that joinder was improper because she was not named in the bank fraud counts asserted against her co-defendants. However, the Eighth Circuit disagreed, finding those counts were sufficiently linked to the bankruptcy counts asserted against Rimell. *Id*. The court favorably quoted the magistrate judge's reasoning that, "[w]hen read as a whole, the indictment reflects a sequence of connected events with the defendants being involved at various points in the continuum." *Id*. at 289. Even though the bankruptcy charges arose at a later time, the court found they

12

were "precipitated by and were linked to the fraudulent acts that had been committed earlier." *Id*.

### c. Additional Authority in RICO Context

While there is little Eighth Circuit authority directly on point in the RICO context, in RICO cases from outside the Eighth Circuit, courts have examined joinder consistent with the precepts applied by the Eighth Circuit.

In *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990), the Second Circuit addressed a joinder challenge brought by a non-RICO co-defendant, Perna, who was joined in an indictment with RICO-charged co-defendants. Among the facts favoring Perna's misjoinder argument, (1) he was not charged in the RICO conspiracy count or in any of the underlying racketeering acts; (2) he was the only defendant not charged jointly in any count in the indictment with a defendant named in the RICO count; and (3) he was the only defendant charged in the two counts naming him. *Id*. While the court found the link between Perna and his co-defendants "somewhat tenuous," it nonetheless found joinder proper because one of the counts charging Perna was integrally related to another count against a co-defendant that was also a RICO racketeering act. *Id*. The facts here lend stronger support to joinder because one of Noble's charges (Count 4) mirrors an underlying racketeering act— the alleged fentanyl sales on February 25, 2022. In addition, Noble was charged in a Count 4 along with Rice, who is named in the RICO count.

Similarly, in *United States v. Locascio*, 357 F. Supp. 2d 536, 541–42 (E.D.N.Y. 2004), the court found joinder proper. There, defendant Schaefer argued that joinder was improper because he had only been charged with a telephone cramming scheme, but not an internet

scheme or a RICO charge. *Id*. at 541. Relying on *Cervone*, the court rejected Schaefer's misjoinder arguments, stating, "Although it is true that the internet and telephone cramming frauds involve different activities and, as such, are distinct, courts have on several occasions held that joinder under Rule 8(b) is proper where a defendant, although not charged in the RICO count itself, is charged in substantive offenses which also serve as predicate acts in the RICO count." *Id*. (citing *Cervone*, 907 F.2d at 332; *United States v. Gotti*, No. X5 02 CR 743 (RCC), 2004 WL 602689, *4 (S.D.N.Y. 2004); *Gallo*, 668 F. Supp. at 748). The court noted that Schaefer was charged, along with five RICO defendants, with participating in a fraudulent scheme in which the proceeds were laundered and channeled to senior members of the enterprise. *Id*. In addition, the telephone cramming scheme was one of the RICO underlying acts. *Id*.; *see also Gallo*, 668 F. Supp. at 748 (finding three non-RICO defendants were properly joined "because the substantive counts with which they are charged are also predicate acts for other co-defendants in the RICO conspiracy count."); *Gotti*, 2004 WL 602689, at *4–5 (finding joinder proper where defendant was not charged with RICO violations but was charged with murder and conspiracy to commit murder, which were underlying acts in the RICO counts).

In *United States v. Brown*, 823 F.2d 591 (D.C. Cir. 1987), although the court spoke of the joinder of offenses, which is governed by Rule 8(a), it applied the standard for joinder of defendants under Rule 8(b), finding joinder was proper:

> We think that all of the offenses charged in this indictment are related in such a way as to make joinder appropriate. The offenses that were not chargeable as RICO predicates were committed at the same times, by the same persons, in accordance with the same general methods, and in pursuance of the same broad schemes as the offenses chargeable as RICO predicates. All of the offenses

charged, in other words, arose out of the same "series of acts or transactions"; the offenses were therefore properly joined in a single indictment.

*Id.* at 598.

In response to Noble's Objection, the Government points to *United States v. Eufrasio*, 935 F.2d 553, 567 (3d Cir. 1991), in which the court stated,

> [Rule 8(b)] permits joinder of defendants charged with participating in the same racketeering enterprise or conspiracy, even when different defendants are charged with different acts, so long as indictments indicate all the acts charged against each joined defendant (even separately charged substantive counts) are charged as racketeering predicates or as acts undertaken in furtherance of, or in association with, a commonly charged RICO enterprise or conspiracy.

In *Eufrasio*, two defendants, charged with RICO violations, extortion, and gambling violations, argued that they were misjoined with another defendant, Idone, who was charged with a murder conspiracy that was charged as a RICO predicate against Idone only. *Id.* at 566. The court found that charging the defendants together did not run afoul of Rule 8(b), explaining that "the murder conspiracy and all the other acts charged in this case were related and formed a single pattern of racketeering activity, because each was committed in furtherance of the Scarfo [mafia] enterprise." *Id.* at 567.

### d. Analysis

Here, the Court finds that the Indictment, when read a whole, alleges an overarching sequence of events "with the defendants being involved at various points in the continuum." *Rimell*, 21 F.3d at 289. Although the allegations concerning Noble's association with the Bloods are not explicit and Noble is not charged in Count 1, as the magistrate judge correctly observed, the Indictment sufficiently alleges that Noble participated in a series of acts that furthered the goals of the gang-related racketeering enterprise.

15

Count 1 makes clear that drug trafficking and distribution played an integral part in the alleged criminal enterprise's pattern of activity.  (Count 1 ¶¶ 1, 3(a), 4(a), 5(b), 6(b).) Count 4 connects Noble with Rice—who is charged in the RICO conspiracy—in an alleged conspiracy to distribute fentanyl on February 25, the same date as a drug-related underlying act attributed to Rice in the RICO count.  (*Compare* Count 4, *with* Count 1, ¶ 8(g).)  In addition, Count 5, which alleges Noble possessed with intent to distribute methamphetamine on February 5, 2022, falls within the overall time frame during which the RICO count alleges drug trafficking and sales as part of the racketeering enterprise.  (*Compare* Count 5, *with* Count 1, ¶ 6 (alleging the RICO conspiracy began in or around 2020 and continued through the date of the filing of the Indictment in April 2023).)  Count 6 refers back to Counts 4 and 5, although it only lists the date for the methamphetamine sales alleged in Count 5 (February 5, 2022).

These allegations allege more than mere overlapping personnel, *Liveoak*, 377 F.3d at 865, as Noble is charged with substantive offenses, at least one of which serves as an underlying act in the RICO count.  *See Cervone*, 907 F.2d at 332; *Locascio*, 357 F. Supp. 2d 541–42.  Noble's individual drug offenses are one of the two general types of activity—drug trafficking/distribution and murder—alleged to have established a pattern of racketeering activity (Indictment, Count 1 ¶ 6(a)-(b)), and the drug offenses are alleged to have been committed during the same time period as the RICO conspiracy.  *See Brown*, 823 F.2d at 598. These charges sufficiently allege transactions undertaken pursuant to a common objective or plan. *Wadena*, 152 F.3d at 848.  In light of these connections to an overarching scheme, and because of the presumption that persons charged in a conspiracy should be tried together,

*Thompson*, 690 F.3d at 988, the magistrate judge did not clearly err in finding that joinder is proper here.   Accordingly, Noble's Objection to the February 2, 2024 Order is overruled in this regard.

**III.   CONCLUSION**

Based upon the foregoing, and all the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that

1. Defendant Andrew Calvin Noble's Objection [Doc. No. 215] to Magistrate Judge Tony N. Leung's February 2, 2024 Order is **SUSTAINED in part**, and **OVERRULED in part**; and

2. Magistrate Judge Tony N. Leung's February 2, 2024 Order [Doc. No. 213] is respectfully **MODIFIED**, as set forth herein, and is otherwise **AFFIRMED**.

Dated: April 1, 2024

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge

17