UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No.: 23-156 (SRN/TNL)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

(5) ANDREW CALVIN NOBLE,
    a/k/a "Drewski,"
    a/k/a "Drew,"

    Defendant.

PLEA AGREEMENT
AND SENTENCING
STIPULATIONS

The United States of America and **ANDREW CALVIN NOBLE** (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

**I. DISPOSITION OF CHARGES AND WAIVER OF TRIAL RIGHTS**

1. **Guilty Plea**. The defendant agrees to plead guilty to Count 1 of the Information filed on March 3, 2025, which charges the defendant with Conspiracy to Engage in a Racketeer Influenced Corrupt Organization, in violation of 18 U.S.C. § 1962(d). The defendant fully understands the nature and elements of the crime with which he has been charged. The United States



agrees to move to dismiss the remaining counts contained in the Indictment against the defendant at the time of sentencing.

2. **Waiver of Trial Rights**. The defendant acknowledges that he has been advised and understands that by entering a plea of guilty he is waiving – that is, giving up – certain rights guaranteed to all defendants by the laws and the Constitution of the United States. Specifically, the defendant is giving up:

   a. The right to proceed to trial by jury on all charges, or to a trial by a judge if the defendant and the United States both agree;

   b. The right to confront the witnesses against the defendant at such a trial, and to cross-examine them;

   c. The right to remain silent at such a trial, with assurance that his silence could not be used against him in any way;

   d. The right to testify in his own defense at such a trial if he so chooses;

   e. The right to compel witnesses to appear at such a trial and testify on the defendant's behalf; and

   f. The right to have the assistance of an attorney at all stages of such trial proceedings.

4. **Additional Consequences**. The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

5. **Additional Charges**. The United States agrees not to bring any additional charges against the defendant arising out of the defendant's participation in conduct described in the agreed-upon factual basis for this Plea Agreement.

## II. ELEMENTS OF THE OFFENSE

6. **COUNT ONE**: The elements of RICO Conspiracy, in violation of 18 U.S.C. § 1962(d) are:

First, that there was an agreement among two or more persons to participate in an enterprise that would affect interstate commerce through a pattern of racketeering activity;

Second, that the defendant knowingly and willfully became a member of that agreement; and

Third, that the defendant agreed that a conspirator, which could be himself, would commit two racketeering acts.

## III. FACTS SUPPORTING GUILTY PLEA.

7. The defendant is pleading guilty because he is in fact guilty of Count 1 of the Information.

8. The defendant acknowledges that if he elected to go to trial instead of pleading guilty, the United States could prove his guilt beyond a reasonable doubt. The defendant further acknowledges that his admissions and declarations of fact set forth below satisfy every element of the charged offense.

9. The defendant waives any potential future claim that the facts he admitted in this Plea Agreement were insufficient to satisfy the elements of the charged offense.

10. The facts set forth below shall be admissible against the defendant at sentencing for any purpose. If the defendant does not plead guilty or withdraws his guilty plea, the facts set forth below shall be admissible at any proceeding, including a trial, for impeaching or for rebutting any evidence, argument, or representation offered by or on the defendant's behalf. The defendant expressly waives all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 regarding the use of the facts set forth below.

11. The defendant understands, acknowledges, and agrees that the facts set forth below are only those necessary to support a plea of guilty to the charge described in this agreement and set forth relevant conduct pursuant to the United States Sentencing Guidelines, and that they do not capture the entirety of his conduct, criminal or otherwise, in this case. The defendant admits and declares under penalty of perjury that the facts set forth below are true and correct:

*Background of the Conspiracy.*

a. The Bloods criminal street gang is involved with acts such as murder, assault, controlled substance trafficking, weapons trafficking, and

other acts of violence against individuals, rival gangs, and/or law enforcement agencies.

The Bloods' Minneapolis, Minnesota chapter has been in existence for several decades and controls and operates in South Minneapolis, Minnesota. This territory includes the neighborhood surrounding "George Floyd Square," located at Chicago Avenue South and 38th Street East.

The Bloods have a formal structure, with two main subsets, namely, the Rolling 30s Bloods and the Outlaw Bloods, whose members work together to commit crimes. The hierarchy of the Bloods includes a head or leader of the gang, senior leaders, street-level leaders, and other members or associates.

*The Defendant's Racketeering Activity.*

a. From at least in or about ~~2005~~ 2020 and continuing through at least on or about March 3, 2025, the defendant was an associate of the Bloods, and conspired with other members, including codefendant Jamaal Rashed Rice, a.k.a. "Red Midnight," to distribute fentanyl, fentanyl analogues, and other controlled substances in the State and District of Minnesota. The defendant admits he is an associate of the Minneapolis Bloods.

b. On July 16, 2021, in Minneapolis, Minnesota, the defendant and codefendant Rice met with another individual who, unbeknownst to the defendant and his codefendant, was a confidential reliable informant (CRI) with the Federal Bureau of Investigation (FBI). The defendant and his

codefendant had agreed to sell the CRI fentanyl. The defendant and his codefendant met with the CRI at a predetermined location in Minneapolis and sold the sold the CRI 40 pills defendant knew to contain oxycodone. The sale was video-recorded and the pills later tested positive for the presence of oxycodone.

    c.    On December 14, 2021, the defendant and his codefendant had agreed to sell the CRI fentanyl. That day, the defendant and codefendant sold over 200 pills with a combined weight of approximately 21 grams to the CRI. The sale was audio-recorded and the pills tested positive for the presence of fentanyl.

    d.    On February 5, 2022, in Richfield, Minnesota, the defendant was stopped in a vehicle by officers of the Richfield Police Department. The defendant was in the rear passenger seat. In a subsequent search of the vehicle, officers found 102 Percocet pills, as well as fentanyl pills weighing approximately 1.5 grams and methamphetamine pills weighing approximately 38 grams. Officers also found two firearms, one of which was a Smith & Wesson model M&P Shield 9mm semiautomatic pistol). The Government maintains Mr. Noble knowingly possessed this firearm and knew it was stolen. Defendant reserves the right to dispute knowingly possessing the firearm and/or knowledge of its provenance and to otherwise contest any sentencing enhancement related to the this or any other firearm.

e. On September 30, 2022, officers of the Minneapolis Police Department again observed the defendant making hand-to-hand drug transactions in downtown Minneapolis. Officers approached the defendant, who fled on foot. After he was apprehended, officers arrested him and found on his person cash and in his backpack, and a bindle of cocaine weighing approximately 2 grams without packaging.

f. On October 7, 2022, officers of the Minneapolis Police Department observed the defendant making hand-to-hand drug transactions in downtown Minneapolis, Minnesota. Officers detained the defendant and on his person found cash, multiple empty plastic baggies, and approximately one gram of cocaine.

g. On November 9, 2022, officers of the Minneapolis Police Department again observed the defendant making hand-to-hand drug transactions in downtown Minneapolis. Officers arrested the defendant, who attempted to flee on foot after being handcuffed. After he was apprehended, officers arrested him and found on his person cash and three bindles of cocaine weighing approximately 2.5 grams. The defendant admitted to officers that he had distributed cocaine.

h. On February 24, 2023, officers of the Minneapolis Police Department again observed the defendant making hand-to-hand drug transactions at the Transit Center near Chicago Avenue South and Lake

7

Street East. After he was arrested on a federal arrest warrant, officers observed cash on his person and on the center console of his vehicle. When he was being booked, the defendant told officers that he had some "oxy" on his person, that was subsequently recovered by officers.

   i. The defendant relied on the protection of other Bloods when selling drugs in Bloods territory, including by the Square. On more than one occasion, the defendant coordinated his drug trafficking with codefendant Rice and other members of the Minneapolis Bloods.

   j. The defendant admits and agrees that the scope of the conspiracy, including transactions that were known or reasonably foreseeable to the defendant in connection with the conspiracy, involved amounts of fentanyl in excess of 400 grams, and amounts of fentanyl analogues in excess of 100 grams.

   k. The defendant admits and agrees that he knew of the agreement and conspiracy, and that he voluntarily participated in it. The defendant agrees that he knew his actions violated the law.

## IV. APPLICATION OF SENTENCING GUIDELINES PROVISIONS

  12. **Count One: Conspiracy to Engage in a Racketeer Influenced Corrupt Organization**. The parties agree that the applicable provision of the United States Sentencing Guidelines governing Count One is U.S.S.G. §2E1.1. That provision applies the greater of 19, or "the offense level

8

applicable to the underlying racketeering activity." The parties therefore agree that because the scope of the conspiracy involved at least 400 grams of fentanyl and at least 100 grams of fentanyl analogue, the base offense level is 30. U.S.S.G. § 2D1.1(c)(5).

13.   The parties agree that other than credit for acceptance of responsibility, no other Guidelines adjustments apply to the determination of the total offense level.

14.   **Reduction of Offense Level for Acceptance of Responsibility**.  Under U.S.S.G. § 3E1.1(a), the United States will recommend that the defendant receive a two-level downward adjustment for acceptance of responsibility unless he: (a) fails to truthfully admit facts establishing a factual basis for the guilty plea when he enters the plea; (b) fails to truthfully admit facts establishing the amount of restitution owed when he enters his guilty plea; (c) fails to truthfully admit facts establishing the forfeiture allegations when he enters his guilty plea; (d) provides false or misleading information to the United States, the Court, Pretrial Services, or the Probation Office; (e) denies involvement in the offense or provides conflicting statements regarding his involvement or falsely denies or frivolously contests conduct relevant to the offense; (f) attempts to withdraw his guilty plea; (g) commits or attempts to commit any crime; (h) fails to appear in court; (i) violates his conditions of pretrial release; or (j) commits any act

which could result in the United States seeking an obstruction of justice enhancement within the meaning of U.S.S.G. § 3C1.1.

Under U.S.S.G. § 3E1.1(b), if the Court determines that the defendant's total offense level, before operation of § 3E1.1(a), is 16 or higher, and if the United States recommends a two-level downward adjustment pursuant to the preceding paragraph, the United States will move for an additional one-level downward adjustment for acceptance of responsibility before sentencing because the defendant communicated his decision to plead guilty in a timely manner that enabled the United States to avoid preparing for trial and to efficiently allocate its resources.

15. **Criminal History Category**. The defendant acknowledges that the Court may base his sentence in part on the defendant's criminal record or criminal history. The Court will determine the defendant's Criminal History Category under the Sentencing Guidelines, and the Criminal History Category could result in an increase in the advisory guideline range.

16. **Relevant Conduct**. The Court may consider any counts dismissed under this Plea Agreement and all other relevant conduct, whether charged or uncharged, in determining the applicable Sentencing Guidelines range and whether to depart or vary from that range.

17. **Additional Sentencing Information**. The stipulated Sentencing Guidelines calculations are based on information now known to the

10

parties. The parties may provide additional information to the United States Probation Office and the Court regarding the nature, scope, and extent of the defendant's criminal conduct and any aggravating or mitigating facts or circumstances. Good faith efforts to provide truthful information or to correct factual misstatements shall not be grounds for the defendant to withdraw his guilty plea.

18.   The defendant acknowledges that the United States Probation Office may calculate the Sentencing Guidelines differently and may rely on additional information it obtains through its investigation. The defendant also acknowledges that the Court may rely on this and other additional information as it calculates the Sentencing Guidelines range and makes other sentencing determinations, and the Court's reliance on such information shall not be grounds for the defendant to withdraw his guilty plea.

V.   **APPLICATION OF SENTENCING STATUTES**

19.   **Maximum Penalty**. The maximum penalty for RICO Conspiracy, in violation of 18 U.S.C. §§ 1962(d) and 1963, is life in prison, a fine not to exceed $250,000 or twice any pecuniary gain to the defendant or loss to the victim(s), or both.

20.   **Factors Under 18 U.S.C. § 3553**. The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining the defendant's sentence.

However, the statutory maximum sentence and any statutory minimum sentence limit the Court's discretion in determining the defendant's sentence.

21. **Parole Abolished**. The defendant acknowledges that his prison sentence cannot be shortened by early release on parole because parole has been abolished.

22. **Supervised Release**. In addition to imprisonment and a fine, the defendant will be subject to a term of supervised release of not more than 5 years as to Count One. The defendant understands that if he were to violate any condition of supervised release while on supervised release, the Court could revoke his supervised release, and he could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* USSG §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that he be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

23. **Special Assessment**. The defendant agrees to pay a one-hundred dollar ($100.00) special assessment per count of conviction at the time of sentencing.

24. **Additional Costs**. The defendant is required to pay for the costs of imprisonment, probation, and supervised release, including the costs for electronic monitoring of home detention, unless the defendant establishes that

the defendant does not have the ability to pay such costs, in which case the Court may impose an alternative sanction such as community service.

## VI. POSITIONS REGARDING SENTENCING

25. **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, such a determination shall not provide a basis for the parties to withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

26. **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make motions for departures under the Sentencing Guidelines or for variances pursuant to 18 U.S.C. § 3553(a) and to oppose any such motions made by the opposing party. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

## VII. DEFENDANT'S ACKNOWLEDGEMENTS AND WAIVERS

27. **Plea Agreement and Decision to Plead Guilty**. The defendant acknowledges that:

    a.    He has read this Plea Agreement and understands its terms and conditions;

    b.    He has had adequate time to discuss this case, the evidence, and this Plea Agreement with his attorney;

    c.    He has discussed the terms of this Plea Agreement with his attorney;

    d.    The representations contained in this Plea Agreement are true and correct, including the facts set forth in Section III; and

    e.    He was not under the influence of any alcohol, drug, or medicine that would impair his ability to understand the Agreement when he considered signing this Plea Agreement and when he signed it.

The defendant understands that he alone decides whether to plead guilty or go to trial, and he acknowledges that he has decided to enter his guilty plea knowing of the charges brought against him, his possible defenses, and the benefits and possible detriments of proceeding to trial. The defendant also acknowledges that he decided to plead guilty voluntarily and that no one coerced or threatened him to enter into this Plea Agreement.

28. **Waiver of Appeal and Collateral Attack**. The defendant knowingly and expressly waives: (a) the right to appeal any sentence imposed within or below the applicable Sentencing Guideline range as determined by the Court; (b) the right to appeal the manner in which the Court determined that sentence on the grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal any other non-jurisdictional aspect of the conviction or sentence, including the supervised release term and its conditions, and any order of restitution or forfeiture.

The defendant also knowingly and expressly waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to his conviction, sentence, and the procedure by which the Court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel.

The defendant reserves only the right to appeal any portion of the sentence that is an upward departure or variance from the sentencing guideline range determined by the Court.

The defendant acknowledges that the United States is not obligated or required to preserve any evidence obtained in the investigation of this case.

29. **Forfeiture**. The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 1963,

    a.    any interest acquired or maintained in violation of section 1962;

  b. any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the defendant established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and

  c. any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of 1962.

The defendant also agrees to forfeit to the United States, pursuant to 18 U.S.C. § 924(d)(1) in conjunction with 28 U.S.C. § 2461(c), any firearm with accessories and any ammunition involved in Count 1 in the Information, including but not limited to, (1) a Smith and Wesson M&P 9 Shield M2 9mm semiautomatic pistol, bearing serial number JCK8676; and (2) any and all accessories and ammunition seized therewith.

The United States reserves its right to seek a money judgment forfeiture, to forfeit substitute assets, and to forfeit additional directly forfeitable property.

The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge (including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds. To the extent the defendant has sought

remission or otherwise challenged the forfeiture of the above-described property, he withdraws any such challenges.

30.   **FOIA Requests**.   The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

31.   **Restitution**.   The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. §3663A, applies and that the Court is required to order Defendant to make restitution to the victim(s) of his crimes.   The exact amount of restitution owed by the Defendant will be determined at a later date.

32. **Complete Agreement**. This Plea Agreement resulted from an arms-length negotiation in which both parties bargained for and received valuable benefits in exchange for valuable concessions. No promises, agreements or conditions other than those set forth in this agreement have been made or implied by the defendant, the defendant's attorney, or the United States, and no additional promises, agreements or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the Court.

Dated: 3/4/25

LISA D. KIRKPATRICK
Acting United States Attorney

BY: ESTHER MIGNANELLI SORIA
Assistant United States Attorney

Dated:

ANDREW CALVIN NOBLE
Defendant

Dated: 3/4/25

LEE JOHNSON
Counsel for Defendant